UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
DANIEL PETER MORRIS, and            :
LUCILLE AIOSA MORRIS               :
      Plaintiffs,                     :            **MEMORANDUM DECISION**
                                   :
v.                                 :            10 CV 4146 (VB)
                                   :
DAVID HOWARD ZIMMER,               :
CHARLES L. WILKINSON, III,         :
SHERRY ZIMMER, DEBORA ZIMMER, and  :
DAVID M. ZIMMER,                   :
      Defendants.                     :
--------------------------------------------------------------x

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #:_____ |
| DATE FILED: 11 10 11 |

Briccetti, J.:

      Plaintiffs Daniel and Lucille Morris bring this action for breach of contract, breach of

fiduciary duty, fraud, conversion, and fraudulent misappropriation of funds.

      Pending before the Court are defendant David Howard Zimmer's (Doc. #77) and

defendants Sherry M., Debora, and David M. Zimmer's (Doc. #78) separate motions to dismiss

under Rule 12(b)(6) for failure to state a claim upon which relief can be granted and under Rule

12(b)(7) for failure to join a party; plaintiffs' motion to add a defendant (Doc. # 81); and

plaintiffs' motion to amend the complaint (Doc. # 83).  For the following reasons, these motions

are DENIED.

      The Court has subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1332.

## BACKGROUND

      For purposes of ruling on the motions to dismiss, the Court accepts all factual allegations

of the complaint as true.

I.    The NASD Represenation

      Plaintiffs assert that David Howard Zimmer ("David H. Zimmer" or "Zimmer"), who at

the time was an attorney, represented plaintiffs in an arbitration, under the rules of the National

1

Copies Mailed/Faxed 11/10/11
Chambers of Vincent L. Briccetti   JH

Association of Securities Dealers ("NASD"), against Morgan Stanley Dean Witter & Co. ("Morgan Stanley"), Luguan Luan, and Gotham Bhojwani. Plaintiffs paid David H. Zimmer $8,500.00 for his services. The NASD matter was settled before an arbitration hearing occurred. Pursuant to the settlement, Morgan Stanley, Luan, and Bhojwani agreed to pay plaintiffs $82,000.00, consisting of $78,000.00 from Morgan Stanley and $4,000.00 from Luan.

The $78,000.00 was paid to David H. Zimmer as plaintiffs' attorney. Zimmer received the check on July 19, 2004 and deposited it in a Sun Trust bank account on July 21, 2004. He also received the $4,000.00 check and by email dated July 27, 2004, informed plaintiffs that he would hold on to the check while he attempted to obtain enhanced fines and penalties under NASD rules. Plaintiffs claim Zimmer never attempted to obtain the enhanced fines and penalties. By email dated August 11, 2004, Zimmer informed plaintiffs that the attempt to get enhanced recovery was unsuccessful.

Zimmer also received a refund from the NASD for the unused arbitration fee, in the amount of $1,125.00. The refund check was made payable to plaintiffs. On June 2, 2004, Zimmer deposited the refund check in the Sun Trust account.

During the settlement process, Zimmer asked Daniel Morris if he was interested in participating in a business that Zimmer was involved in. Morris said he could not think about Zimmer's business at that moment, in light of the pending settlement discussions. Plaintiffs claim they did not discuss the issue again until Zimmer emailed Daniel Morris on May 27, 2004, stating that he was looking forward to working with Morris on Complete Auctions, Zimmer's business venture. In an email dated August 11, 2004, Zimmer told Morris he was launching Complete Auctions and he had allocated $50,000.00 of the original shares in the company to

2

Morris.  Zimmer stated that the "guarantee is simple, if it does not perform as stated, on or before the end of the year I will give you back your investment."

Morris claims he never agreed to invest in Zimmer's business and there were never any "original issued shares" in Complete Auctions.

A short time after receiving the August 11, 2004, email from Zimmer, Morris called Zimmer to inquire as to why plaintiffs had not received their share of the NASD settlement.  In response, Zimmer told Morris he thought Morris agreed to invest the money in Complete Auctions when Morris never responded to Zimmer's August 11, 2004, email.  Morris denied agreeing to invest plaintiffs' share of the settlement funds in Zimmer's business and demanded that Zimmer pay the settlement proceeds to plaintiffs.  Zimmer told Morris he did not have the money since he had used it in his business.  Plaintiffs maintain Zimmer acknowledged Morris never agreed to invest in Complete Auctions.  In an email dated September 16, 2004, Zimmer stated it was his understanding that he was permitted to use the settlement proceeds in Complete Auctions, but he understood "now that was not the case."

Subsequent to Morris's call to Zimmer, Zimmer sent plaintiffs unsolicited materials about Complete Auctions in an attempt to get plaintiffs to invest all or part of the settlement money.

On September 15, 2004, Morris emailed Zimmer asking him to confirm that Zimmer owed plaintiffs $72,000.00 of the $82,000.00 he had received from the NASD settlement.  By email dated September 16, 2004, Zimmer responded "Confirmed."  Plaintiffs assert that the September 15, 2004, email incorrectly stated the amount owed plaintiffs as $72,000.00 instead of the proper amount of $82,000.00.  Plaintiffs needed the NASD settlement proceeds to pay for their children's college tuition.

Plaintiffs assert that, on September 15, 2004, Daniel Morris spoke with Zimmer on the phone, and that Zimmer agreed to pay plaintiffs 8% interest on the settlement proceeds from July 1, 2004, until Zimmer paid plaintiffs. Zimmer, in an email to Daniel Morris dated September 15, 2004, stated that for "further reassurance, I will submit a letter to my associate counsel in the 'Georgia Matter' informing him that you effectively have a secured lien on the proceeds from the fees from the settlement upon receipt." The "Georgia Matter" refers to Zimmer's representation of plaintiffs in the case of John Armstrong v. Durango Georgia Paper Co., CV 202-085, filed in the Southern District of Georgia. Zimmer's reference to his associate counsel in the Georgia case is to Charles L. Wilkinson, III. Zimmer sent a letter to Wilkinson on February 10, 2005, stating "Daniel Morris is entitled to the first $72,000.00, plus interest of 8% from July 1, 2004 on the principal balance, of the proceeds of the 'Georgia' case."

On March 14, 2005, Morris told Zimmer by email that plaintiffs should be entitled to the entire $82,000.00 NASD settlement, plus $1,125.00 for the arbitration fee refund. Zimmer responded on March 15, 2005, stating that Morris's calculation "sounds fair."

II.    Zimmer's Disbarment

Zimmer was admitted to the Bar of the State of Maryland. On July 6, 2007, plaintiffs filed a complaint against Zimmer with the Maryland Attorney Grievance Commission. On July 13 the grievance commission sent Zimmer a letter seeking a response to plaintiffs' complaint. Zimmer requested from the grievance commission an extension of time to respond to plaintiffs' complaint, and the grievance commission, by letter dated August 2, 2007, granted the extension, directing Zimmer to respond to the complaint by October 17. Zimmer sent plaintiffs a letter stating he had hired counsel to handle the grievance commission matter, and that plaintiffs could

4

expect contact from that counsel. No counsel contacted plaintiffs on behalf of Zimmer, and Zimmer did not respond to the grievance commission by the October 17 deadline.

By letter dated October 23, 2007, the grievance commission directed Zimmer to respond to the complaint within ten days. Zimmer never responded. In light of several failed attempts to contact Zimmer, the grievance commission petitioned the Maryland Court of Appeals for his disbarment.

On March 4, 2009, Zimmer submitted an answer to the disbarment petition, which stated that Daniel Morris had agreed to submit his portion of the NASD settlement proceeds for use by Complete Auctions and that Zimmer offered Morris the proceeds from the "Georgia case" in lieu of the NASD settlement amount, which Morris accepted. Zimmer claimed Morris drafted an agreement memorializing this arrangement. Zimmer further asserted in his answer that Wilkinson was made aware of the agreement between Zimmer and Morris, and that Morris spoke with Wilkinson about the arrangement. Zimmer also acknowledged that plaintiffs intended to use the money to pay for their children's tuition.

Plaintiffs allege that on May 6, 2009, Zimmer reiterated to Morris in a telephone conversation that Wilkinson was to pay plaintiffs the money that Zimmer owed them.

Plaintiffs deny Morris agreed to accept proceeds from the Georgia case in lieu of the NASD settlement funds, deny Morris drafted an agreement regarding the proceeds from the Georgia case, and deny that Morris contacted Wilkinson about this alleged agreement or requested Wilkinson be made known of the agreement.

On April 20, 2009, the Maryland attorney grievance commission filed a joint petition for disbarment of Zimmer by consent in the Maryland Court of Appeals. In the joint petition, Zimmer acknowledged that he failed to respond to the grievance commission's demands for

information, failed to maintain his Maryland Bar admission in good standing, and failed to notify

the United States District Court for the Southern District of Georgia that he was not in good

standing while he was practicing before that court.  By order dated May 5, 2009, the Maryland

Court of Appeals disbarred Zimmer.

III.   New York Criminal Action Against Zimmer

On November 8, 2007, plaintiffs received an envelope containing three money orders

worth $2,500.00.  The envelope was not labeled with a return address, but "Zimmer" was printed

in the "From" field on the money orders.

Plaintiffs made numerous attempts to bring criminal charges against Zimmer.  On July 1,

2009, the New York County District Attorney issued a warrant for Zimmer's arrest for grand

larceny in the second degree for stealing plaintiffs' $78,000.00 check issued by Morgan Stanley

pursuant to the NASD settlement.  On May 19, 2010, Zimmer pleaded guilty to a petit larceny

misdemeanor under New York State Penal Law § 155.25.  As part of the plea allocution, Zimmer

admitted to stealing $72,000.00 from Daniel Morris, provided a check made out to Morris in the

amount of $6,000.00, and agreed to appear on November 10, 2010, in Part C of the New York

State Criminal Court to provide the District Attorneys' Office with a check for the remaining

amount.

Plaintiffs took issue with the amount of money Zimmer admitted to stealing in the plea

allocution.  Daniel Morris sent an email to Assistant District Attorney Joanne Siegmund on May

24, 2010, asking why Zimmer only admitted to stealing $72,000.00 when plaintiffs had provided

evidence that he stole at least $83,625.00.  Siegmund responded via email the same day, stating

that she would try to get the amount corrected.  Siegmund further responded by email dated July

6

15, 2010, that she had a phone call with Zimmer's defense attorney to go over the details of what Zimmer owed plaintiffs, and gave him the $83,625.00 figure.

The present action was commenced on May 20, 2010. Defendants submitted a motion to dismiss in this action on July 21, 2010. In that motion, Zimmer stated he was given a credit for $12,000.00 against plaintiffs' claims. Upon receiving the motion to dismiss, Daniel Morris inquired of Siegmund's supervisor, Thomas Wornom, whether this was correct. Wornom responded via email, stating that the discrepancy between the $72,000.00 and $83,625.00 figure was not the result of any "credits" extended to Zimmer, but was an inadvertent misstatement of the amount owed at the time of the guilty plea. In an affidavit of confession of judgment signed by Zimmer and filed on November 18, 2010, in Part C of the New York State Criminal Court, Zimmer admitted he failed to return $83,625.00 to plaintiffs and used that money for his own purposes. Zimmer further admitted to owing plaintiffs $77,625.00 of the $83,625.00.

IV.    The Other Zimmer Defendants

Plaintiffs maintain that the NASD settlement proceeds and associated fees were transferred to Zimmer's business, Complete Auctions. Plaintiffs allege that Complete Auctions "never actually had any business." The 2004 limited liability company annual report of Complete Auctions, LLC, filed on May 9, 2004, with the Florida Secretary of State, lists David and Sherry Zimmer as managing members. The 2005 annual report, filed on June 7, 2005, lists Debbie and David M. Zimmer as managing members. The address of these four individuals and the address of Complete Auctions is the same – 6477 NW 38th Way, Boca Raton, Florida 33496. Plaintiffs allege that as managing members of Complete Auctions, these four individuals (the four Zimmer defendants in this case), knew or should have known that Complete Auctions received funds obtained by fraud and thus had a duty to inquire into the source of those funds.

7

Plaintiffs claim defendants were intentionally ignorant about the source of the funds, benefitted from the use of those funds and, as a result, are jointly and severally liable for the damages claimed in this action.

V.    Procedural Posture

Plaintiffs filed an action in New York State Supreme Court on December 30, 2010, against Stephanie L. Zimmer, who is not named in the present case, for claims related to those asserted against the defendants in this action.  Stephanie Zimmer is not included as a member of Complete Auctions in the company's annual reports attached to the second amended complaint. Defendants claim she is an equal shareholder and owner of Complete Auctions.

With leave of the Court, plaintiffs filed a second amended complaint in this action on February 8, 2011.  On July 6, 2011, defendant David H. Zimmer and defendants Sherry M., Debora, and David M. Zimmer filed separate motions to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted and under Rule 12(b)(7) for failure to join an indispensable party.  On July 18, 2011, plaintiffs submitted a letter motion seeking to join Stephanie Zimmer as a defendant under Rule 21.  On July 22, 2011, plaintiffs submitted a letter motion seeking to add claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") against defendants (and Stephanie Zimmer).  The relevant facts and substance of these motions are virtually identical, so the Court considers them all in this decision.

## DISCUSSION

I.    Rule 12(b)(6) Motion to Dismiss

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court evaluates the sufficiency of the complaint under the "two-pronged approach" suggested by the Supreme Court in Ashcroft v. Iqbal.  See 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009).  First,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Iqbal, 129 S. Ct. at 1949; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Iqbal, 129 S. Ct. at 1950.

To survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 129 S. Ct. at 1950; Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). A district court may also consider a document that is not incorporated by reference, where the complaint "'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).

A. Failure to State a Claim

In their motions to dismiss, defendants make various allegations that plaintiffs have failed to include certain material in or attach certain documents to the complaint and have submitted

documents and information to this Court and the New York state courts, in conjunction with the criminal action against David H. Zimmer, in an attempt to extort money from defendants.

Defendants' arguments fail.  The proper inquiry on a motion to dismiss is whether the allegations and facts set forth in the complaint allow the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  See Ashcroft v. Iqbal, 129 S. Ct. at 1949-50.

1.   Breach of Fiduciary Duty and Misappropriation

The second amended complaint alleges that David H. Zimmer acted as plaintiffs' lawyer in a NASD arbitration against Morgan Stanley, procured a settlement on their behalf, and failed to pay them the settlement proceeds.  A lawyer is bound to conduct himself as a fiduciary or trustee occupying the highest position of trust and confidence in all his relations with his clients. Hafter v. Farkas, 498 F.2d 587, 589 (2d Cir. 1974).  "This fiduciary relationship precludes the attorney from having personal interests antagonistic to those of the client or from obtaining personal advantage or profit out of the relationship without the knowledge or consent of the client."  Id.  "Upon the collection or receipt of property or funds for the benefit of the client it is the duty of the attorney to notify the client promptly and, absent some contrary understanding . . . to pay or remit the same to the client less only proper fees and disbursements as soon as reasonably possible."  Id. at 590.

Plaintiffs allege the following facts.  David H. Zimmer acted as their attorney in the NASD arbitration and procured a settlement in the NASD arbitration on their behalf.  Morgan Stanley and Luguan Luan agreed to pay plaintiffs $82,000.00 via checks to Zimmer as attorney for plaintiffs, and Zimmer deposited those checks in a Sun Trust bank account.  Plaintiffs did not consent to Zimmer's use of the NASD settlement proceeds for any other purpose.  Zimmer

10

pleaded guilty to petit larceny in New York criminal court for stealing the NASD settlement
proceeds from plaintiffs; confessed he had failed to return $83,625.00 to plaintiffs and used that
money for his own purposes; and admitted owing plaintiffs $77,625.00 as full restitution for that
theft.[1] Finally, plaintiffs claim that Zimmer has not paid them that amount.

Based on the allegations in and the documents attached to the second amended
complaint, plaintiffs have stated a claim for breach of fiduciary duty and misappropriation of
client funds. See Hafter v. Farkas, 498 F.2d at 589 (citing In re Babcock, 243 N.Y.S. 489, 492
(4th Dep't 1930) (holding attorney misappropriated client funds when he used the proceeds of
two checks, which he received in payment of his client's claim, for his own purposes)).

    2.  Conversion

Plaintiffs allege facts satisfying all the elements of a claim for conversion. To state a
claim for conversion under New York law, plaintiffs must allege: (1) the party charged has acted
without authorization, and (2) exercised dominion or a right of ownership over property
belonging to another, (3) the rightful owner made a demand for return of the property, and (4)
the demand for the return was refused. See King v. Fox, 2004 WL 68397, at *7 (S.D.N.Y. Jan.
14, 2004). Plaintiffs allege that Zimmer improperly retained settlement proceeds belonging to
them and used those proceeds in his business without their permission; Daniel Morris demanded
payment of those proceeds; and Zimmer has not paid plaintiffs the proceeds as of the filing of the
second amended complaint. Thus, plaintiffs state a cause of action for conversion. See In re

---

[1]   Zimmer is collaterally estopped from arguing that he did not steal $83,625.00 from
plaintiffs and use that money for his own purposes, or that the New York criminal plea and
sentence were procured through illicit or fraudulent means. See Blumatte v. Farthing, 320 Fed.
App'x 68, 70-71 (2d Cir. 2009) (holding the preclusive effect of a guilty plea made in a formal
court proceeding, following a thorough allocution, established that plaintiff stole funds and
precluded plaintiff from arguing that others falsely accused him of doing so).

Anschell, 385 N.Y.S.2d 771, 772 (1st Dep't 1976) (holding that a lawyer's use of a client's money for any purpose of his own constitutes conversion).

### 3. Breach of Contract

The facts alleged in the second amended complaint also plausibly support a breach of contract claim.  See Marte v. Graber, 924 N.Y.S.2d 720, 721-22 (App. Term 2011) (holding that a suit for refund of alleged overpayment of fees for legal services sounded in breach of contract). Though plaintiffs do not provide a retainer agreement, the second amended complaint alleges sufficiently that Zimmer acted as their attorney and agreed to pay them the NASD settlement proceeds.  Plaintiffs provide evidence in support of this agreement, including, among other things, emails in which Zimmer states that plaintiffs are entitled to the NASD settlement proceeds and agrees to pay plaintiffs the proceeds; the NASD settlement agreement in which Morgan Stanley and Luan agreed to pay $82,000.00 to Zimmer as attorney for plaintiffs; and an affidavit signed by Zimmer stating that he owes plaintiffs $77,625.00.  Therefore, plaintiffs adequately plead a breach of contract claim.

### 4. Fraud

The second amended complaint states a claim for fraud.  "Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff."  Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001) (citing Lama Holding Co. v. Smith Barney, Inc., 646 N.Y.S.2d 76 (1996)).  A party must state with particularity the circumstances constituting fraud or mistake.  See Fed. R. Civ. P. 9(b).  "Specifically, the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2)

12

identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993).

Here, plaintiffs provide dated documentary evidence showing Zimmer repeatedly informed Daniel Morris that he would pay plaintiffs the NASD settlement proceeds. Zimmer never paid plaintiffs because, as Zimmer acknowledged, he invested the settlement proceeds in his business, Complete Auctions. Plaintiffs allege they relied on Zimmer's false representations in arranging their personal finances. As of the filing of the second amended complaint, Zimmer has still not paid plaintiffs the NASD settlement proceeds. Therefore, at this stage, plaintiffs have pleaded a claim for fraud with particularity.

    B.  Laches

Defendants argue in their motions to dismiss under 12(b)(6) that this action should be dismissed under the doctrine of laches. This argument is without merit. Laches is an equitable defense that bars injunctive relief where a plaintiff unreasonably delays bringing a law suit. Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V., 1992 WL 296314, at *4 (S.D.N.Y. Oct. 6, 1992). Laches, however, does not serve to bar claims for damages. U.S. v. Gordon, 78 F.3d 781, 786 (2d Cir. 1996); Grant Airmass Corp. v. Gaymar Indus., Inc., 645 F. Supp. 1507, 1515 (S.D.N.Y. 1986). Thus, laches is not a bar to plaintiffs' contract and fraud claims. M. Lowenstein & Sons, Inc. v. Austin, 430 F. Supp. 844, 846 (S.D.N.Y. 1977); Fade v. Pugliani/Fade, 779 N.Y.S.2d 568, 570 (2d Dep't 2004) ("[L]aches is not applicable to an action at law, and thus may not bar . . . causes of action alleging breach of contract and fraud to the extent they seek money damages.").

II.   Rule 12(b)(7) Motion to Dismiss

Rule 12(b)(7) provides that a party may move to dismiss a complaint for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). Rule 19 "sets forth a two-step test for

determining whether the court must dismiss an action for failure to join an indispensable party." Viacom Int'l, Inc. v. Kearney, 212 F.3d 721, 724 (2d Cir. 2000). The burden of demonstrating that a party is necessary rests with the moving party. Greenwich Life Settlements, Inc. v. ViaSource Funding Grp., LLC, 742 F. Supp. 2d 446, 455 (S.D.N.Y. 2010).

"First, the court must determine whether an absent party belongs in the suit, i.e., whether the party qualifies as a 'necessary' party under Rule 19(a)." Id. Rule 19(a)(1) provides that the absent party should be joined, if feasible, where:

> (A) in that person's absence, the court cannot accord complete relief among existing parties, or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect the interest or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

Second, after the court makes a threshold determination that a party is necessary under Rule 19(a), it must determine whether joinder of the absent party is "feasible for jurisdictional or other reasons." Viacom Int'l, Inc. v. Kearney, 212 F.3d at 725; Fed. R. Civ. P. 19(b). "If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). If a party does not qualify as necessary under Rule 19(a), then the court need not decide whether its absence warrants dismissal under Rule 19(b). See Associated Dry Goods Corp. v. Towers Fin. Corp., 920 F.2d 1121, 1123 (2d Cir.1990).

Defendants claim that Stephanie L. Zimmer has interests in this lawsuit identical to Sherry, Debora, and David M. Zimmer, as the lawsuit relates to the corporate ownership of Complete Auctions. Defendants argue that as an equal shareholder and owner of Complete

Auctions, Stephanie Zimmer is a necessary and indispensable party to this lawsuit.  Further,

defendants claim her joinder would destroy diversity, as she is a New York resident.

Defendants' only argument that Stephanie Zimmer is a necessary party under Rule 19(a)

is that she is an equal shareholder and owner of Complete Auctions, a limited liability company.

Plaintiffs' theory is that Sherry, Debora, and David M. Zimmer are jointly and severally liable

for knowingly and wrongfully benefiting, as co-owners of Complete Auctions, from David H.

Zimmer's conversion of the NASD settlement proceeds.  If plaintiffs prevail on this theory,

defendants argue, Stephanie Zimmer would also be jointly and severally liable as a co-owner of

Complete Auctions.  This is not enough to show Stephanie Zimmer is a necessary and

indispensable party to this action.  See Temple v. Synthes Corp., 498 U.S. 5, 8 (1990) (holding

joint tortfeasors are not necessary parties under Rule 19); Tehran-Berkeley Civil & Envtl. Eng'rs

v. Tippetts-Abbett-McCarthy-Stratton, 888 F.2d 239, 243 (2d Cir. 1989) ("We have construed

Fed. R. Civ. P. 19 as not mandating the joinder of joint obligors.").

Defendants argue additionally that any decision in this matter will prejudice Stephanie

Zimmer's interests in the pending state court action against her.  The Court is unpersuaded by

these arguments.  The mere possibility that continuation of this federal case could have some

effect on the litigation between plaintiffs and Stephanie Zimmer in state court is too speculative

to support a holding under Rule 19(a)(1)(B)(i) that Stephanie Zimmer's interests will be

impaired by the continuation of this litigation in her absence.  Nor will continuation of this action

in Stephanie Zimmer's absence expose her to inconsistent obligations or double liability under

Rule 19(a)(1)(B)(ii).  See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399,

406-13 (3d Cir. 1993) (providing a thorough analysis under Rule 19(a) as to why any decision

rendered in a federal action would not create any "persuasive precedent" against a jointly and

severally liable absent party, and why continuation of the federal case in the non-party's absence would not subject the federal defendant to double or inconsistent obligations); see also Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 113-17 (1968) (overruling dismissal of federal action, because an absent party sued in a related state action was not indispensable).

Thus, defendants have not sustained their burden of demonstrating Stephanie Zimmer is a necessary and indispensable party.

A.  Plaintiffs' Rule 21 Request to Join Stephanie Zimmer as a Defendant

On July 18, 2011, after opposing defendants' 12(b)(7) motion to dismiss for failure to join Stephanie Zimmer as a party, plaintiffs submitted a letter motion seeking to join her as a defendant.  Rule 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21.  The purpose of the rule is to permit joinder of a person who, through inadvertence, mistake, or some other reason has not been made a party and whose presence as a party is later found necessary or desirable.  See Fair Hous. Dev. Fund Corp. v. Burke, 55 F.R.D. 414, 419 (E.D.N.Y. 1972).  In deciding whether to permit joinder under Rule 21, courts apply the same liberal standard afforded motions to amend pleadings under Rule 15. Tavares v. City of New York, 2010 WL 234974, at *3 (S.D.N.Y. Jan. 19, 2010).  Despite this liberal standard, courts are most reluctant to order joinder in situations where an absent party's joinder would affect subject matter jurisdiction.  See Fair Hous. Dev. Fund Corp. v. Burke, 55 F.R.D. at 419 n.9.

Defendants claim, as they do in their 12(b)(7) motion to dismiss, that Stephanie Zimmer is a non-diverse party whose joinder would destroy federal jurisdiction.  Plaintiffs dispute this, and both sides present evidence purporting to show that Stephanie Zimmer is or is not diverse. In light of the likelihood that joinder of Stephanie Zimmer will destroy diversity jurisdiction in

this action, and in accordance with the Court's determination that she is not a necessary and indispensable party, the Court denies plaintiffs' Rule 21 request to join Stephanie Zimmer as a defendant.

III.   <u>Plaintiff's Motion to Amend to Add RICO Claims</u>

Plaintiffs seek to add RICO claims against defendants, alleging that David H. Zimmer's conversion of the NASD proceeds for use in Complete Auctions, and Zimmer's attendant misrepresentations, were part of a larger scheme in which defendants, as part of the Complete Auctions joint enterprise, engaged in a pattern of racketeering in violation of RICO Sections 1962(c) and (d).

Federal Rule of Civil Procedure 15(a) instructs that courts "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 200-01 (2d Cir. 2007). A proposal to amend a complaint is futile if the proposed amended complaint would fail to state a claim on which relief could be granted. <u>See</u> <u>Troung v. Am. Bible Soc'y</u>, 171 Fed. App'x 898-99 (2d Cir. 2006).

The basis for plaintiffs' RICO claim is the same act that serves as the basis for their breach of contract and fraud claims: David H. Zimmer's conversion of the NASD settlement proceeds for use in Complete Auctions. Plaintiffs attempt to portray Zimmer's various alleged misrepresentations about the whereabouts and transfer of those proceeds as a "pattern of racketeering."

17

A person commits a RICO violation when he (a) invests income derived from a pattern of racketeering in an enterprise; or (b) controls an enterprise through a pattern of racketeering activity; or (c) participates in an enterprise through a pattern of racketeering activity; or (d) conspires to violate subsections (a), (b) or (c). See 18 U.S.C. § 1962. "The threshold requisite common to subsections (a), (b), and (c) of a civil RICO claim, then, is a showing of a 'pattern of racketeering activity.'" Dempsey v. Sanders, 132 F. Supp. 2d 222, 226 (S.D.N.Y. 2001). To establish a RICO pattern, a plaintiff must show that the "racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989). Predicate acts are "related" for RICO purposes when they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events. Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 97 (2d Cir. 1997). To establish continuity, a plaintiff must allege "either an 'open-ended' pattern of racketeering activity, (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a 'closed-ended' pattern of racketeering activity (i.e., past criminal conduct 'extending over a substantial period of time')." Id. (citations omitted).

The "racketeering predicates" defined in Section 1961 include wire and mail fraud. See 18 U.S.C. § 1961(1). Plaintiffs allege no new facts in their motion to amend. They allege as predicate acts Zimmer's alleged fraudulent retention of the NASD settlement proceeds; defendants' intentional ignorance in using those proceeds for the Complete Auctions business; Zimmer's representations to plaintiffs via email and regular mail regarding the investment of the proceeds in Complete Auctions and the payment of the proceeds to plaintiffs; and Zimmer's representations in several motions submitted to this court regarding plaintiffs' claims.

18

These acts are certainly related, they all relate to the retention and conversion of the NASD settlement proceeds for use in Complete Auctions. However, these facts fail to establish the continuity necessary to establish a pattern of racketeering activity.

Plaintiffs do not allege facts indicating the alleged frauds perpetrated against them here are representative of the manner in which Zimmer or defendants' company conducts business, and thus plaintiffs fail to allege an "open-ended" pattern of racketeering activity. Dempsey v. Sanders, 132 F. Supp. 2d at 228.

Plaintiffs also fail to allege "close-ended" continuity. "[W]here a Plaintiff alleges a single scheme promulgated for the limited purpose of defrauding a single victim, continuity cannot be established." Dempsey v. Sanders, 132 F. Supp. 2d at 228. "Courts must take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO." Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d at 98. Here, that is exactly what plaintiffs are attempting to do. There is one main fraudulent act: Zimmer's alleged fraudulent retention of the NASD settlement proceeds for use in his business. The other acts complained of all flow from that main fraud against plaintiffs. Zimmer's continued misrepresentations to plaintiff and alleged misrepresentations to this Court are all "subparts of the singular act, and not a 'pattern' of separate acts with an underlying purpose. Consequently, there is no closed-ended continuity." Id.

Because plaintiffs fail to allege a pattern of racketeering to support a RICO claim, plaintiffs' motion to amend the second amended complaint to add RICO claims against defendants is denied as futile.

**CONCLUSION**

For the reasons stated above, defendant David H. Zimmer's (Doc. #77) motion to dismiss, defendants Sherry M., Debora, and David M. Zimmer's (Doc. #78) motion to dismiss, plaintiffs' motion to add a defendant (Doc. # 81), and plaintiffs' motion to amend the complaint (Doc. # 83) are DENIED.  The Clerk is instructed to terminate these motions.  The parties are directed to appear before the Court at a status conference at the on December 2, 2011, at 2:00 p.m.

Dated: November 10, 2011
       White Plains, New York

                                        SO ORDERED:


                                        _____
                                        Vincent L. Briccetti
                                        United States District Judge