UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MORRIS et al.,<br><br>                    **Plaintiffs,**<br><br>          *- against -*<br><br>ZIMMER, et al.,<br><br>                    **Defendants.** | **10 Civ. 4146 (VB)(LMS)**<br><br>**REPORT AND<br>RECOMMENDATION** |

**TO: THE HONORABLE VINCENT BRICCETTI, U.S.D.J.**

Plaintiffs Daniel and Lucille Morris (referred to individually as "D. Morris" or "L.

Morris," and referred to collectively as "Plaintiffs"), proceeding *pro se*, bring this action,

asserting claims for breach of contract, breach of fiduciary duty, fraud, conversion, and

misappropriation of funds. See Second Am. Compl., Docket # 52. Currently before the Court

are several motions for summary judgment filed by both Plaintiffs and the several Defendants,

who are also proceeding *pro se*. See Docket ## 317, 320, 323, 326, 329, 331.[1]  For the reasons

that follow, I conclude, and respectfully recommend that Your Honor should conclude, that

Plaintiffs' motion for summary judgment against David H. Zimmer should be granted in part and

denied in part; Plaintiffs' motion for summary judgment against Sherry Zimmer, Debra Zimmer,

and David M. Zimmer (the "Other Zimmer Defendants") should be denied; the Other Zimmer

Defendants' motion for summary judgment against Plaintiffs should be granted; Plaintiffs'

motion for summary judgment against Charles L. Wilkinson, III ("Wilkinson") should be denied;

and Wilkinson's motion for summary judgment against Plaintiffs should granted.  Accordingly,

the Other Zimmer Defendants and Wilkinson should be dismissed from the action.

---

[1]Docket ## 329 and 331 are identical documents.

PRO SE PARTIES

Copies Mailed to ~~Counsel~~ of Record.

## BACKGROUND

The following facts relevant to the disposition of these motions are undisputed unless otherwise noted.

Defendant David H. Zimmer ("D.H. Zimmer") acted as Plaintiffs' attorney in the NASD arbitration proceeding of Daniel P. Morris and Lucille A. Morris v. Morgan Stanley Dean Witter & Co., Inc., Luguang Luan, and Gotham Bhojwani, Arbitration No. 03-08962. Prior to going to arbitration, the parties agreed to settle the matter. Because the arbitration hearing did not take place, the hearing session deposit of $1,125 paid by Plaintiffs was refunded by the NASD. On May 28, 2004, the NASD issued a check for $1,125 made payable to "Daniel and Lucille Morris c/o David H. Zimmer, 6477 NW 38th Way, Boca Raton, FL 33496." Second Am. Compl. Ex. 38. D.H. Zimmer deposited the check into a SunTrust bank account, and it was posted to the account on June 7, 2004. Id.

Thereafter, the settlement was finalized upon Plaintiffs' signature of the settlement documents, which Plaintiffs forwarded to D.H. Zimmer on June 21, 2004. Second Am. Compl. Ex. 20. Pursuant to the settlement agreement, Morgan Stanley Dean Witter ("MSDW") agreed to pay Plaintiffs $78,000, and Luguang Luan agreed to pay Plaintiffs $4,000. Second Am. Compl. Ex. 19. Both amounts were to be paid by check made payable to "David Zimmer, Esq. as attorney for Daniel P. Morris and Lucille A. Morris," and the payments were to be made within 20 business days of MSDW's receipt of the original General Release and Settlement Agreement signed by Plaintiffs. Id.

By letter dated July 19, 2004, D.H. Zimmer received a check from MSDW in the amount of $78,000, which was made payable to "David Zimmer as Attorney for Daniel & Lucille Morris, 26 Broadway, Ste 2310, New York, NY 10004." Second Am. Compl. Exs. 26-27. D.H.

Zimmer countersigned the check and deposited it into a SunTrust bank account on July 21, 2004. Second Am. Compl. Ex. 27.[2] The SunTrust bank account was an account belonging to Complete Auctions LLC ("Complete Auctions"), a Florida limited liability company. Pls.' Exs. in Supp. of Mot. Ex. 43 (SunTrust bank account statements for the Complete Auctions bank account). The 2004 Annual Report for Complete Auctions, which was filed on May 9, 2004, lists D.H. Zimmer and his wife, Sherry Zimmer ("S. Zimmer"), as "managing members/members." Second Am. Compl. Ex. 85. The 2005 Annual Report for Complete Auctions, which was filed on June 7, 2005, continues to list D.H. Zimmer and S. Zimmer as "managing members/managers" and adds as "managing members/managers" two of their children, Debbie (Debra) Zimmer ("D. Zimmer") and David M. Zimmer ("D.M. Zimmer"). Second Am. Compl. Ex. 86. D.H. Zimmer contends, and D. Morris denies, that D. Morris agreed to invest the proceeds of the NASD arbitration settlement in Complete Auctions.

When D. Morris demanded that D.H. Zimmer send him the settlement proceeds, D.H. Zimmer responded in an email dated September 15, 2004, "For further reassurance, I will submit a letter to my associate counsel in the 'Georgia Matter' informing him that you effectively have a secured lien on the proceeds from the fees from the settlement upon receipt." Second Am. Compl. Ex. 39. The "Georgia Matter" was the case of <u>John Armstrong, et al. v. Durango Georgia Paper Company</u>, 2:02-cv-00085-AAA-JEG (S.D. Ga.), a federal action commenced on May 10, 2002, in which D.H. Zimmer became a lead attorney on behalf of some of the plaintiffs on May 9, 2003. Second Am. Compl. Exs. 42-43; <u>see</u> Docket ## 70 & 72, 2:02-cv-00085-AAA-

---

[2]Although it is undisputed that D.H. Zimmer deposited the $4,000 check into the SunTrust bank account as well, there is no direct evidence in the form of a cancelled check. Rather, it appears from the SunTrust bank statement for July, 2004, that a $4,000 deposit was made on July 2. <u>See</u> Pls.' Exs. in Supp. of Mot. (Docket # 323-2) Ex. 43.

JEG (S.D. Ga.).  The "associate counsel" referred to by D.H. Zimmer was Defendant Wilkinson.

On February 9, 2005, D.H. Zimmer emailed D. Morris a copy of a memorandum dated February

10, 2005, from David Zimmer to Charles Wilkinson, which states, "Consistent with our

discussion of earlier today, this memorandum confirms that Daniel Morris is entitled to the first

$72,000.00, plus interest of 8% from July 1, 2004 on the principal balance, of the proceeds of the

'Georgia' case."  Second Am. Compl. Exs. 40-41.  Wilkinson states that D.H. Zimmer never

spoke to him about Plaintiffs and never sent him this memorandum.

According to Plaintiffs, D. Morris last corresponded with D.H. Zimmer by email on

March 15, 2005, at which time D. Morris told D.H. Zimmer that D. Morris "should receive the

entire $82,000 settlement" and asked whether he should receive a refund of the $1,125 paid for

the three arbitrators since there was no arbitration hearing.  Second Am. Compl. Ex. 44.  D.H.

Zimmer responded, "That sounds fair Dan.  Case is moving along nicely.  When it is finished

you can tell Les [Wilkinson] how you want the checks distributed."  Id.

There is no evidence that anything further happened in connection with Plaintiffs'

recovery of their money until June, 2007, when, according to Plaintiffs, D. Morris began to make

attempts to contact D.H. Zimmer to find out the whereabouts of Plaintiffs' money.  See Second

Am. Compl. Exs. 46, 50-54.[3]  In addition, in July, 2007, D. Morris filed a complaint against D.H.

Zimmer with the Attorney Grievance Commission of Maryland, since D.H. Zimmer was

---

[3]In the interim, on April 14, 2005, D.H. Zimmer and S. Zimmer filed for bankruptcy in
Florida, In re David Howard Zimmer and Sherry Merle Zimmer, 05-31723-BKC-PGH (Bankr.
S.D. Fla.).  That case was closed on April 7, 2008, but on November 25, 2013, Plaintiffs filed a
motion in the bankruptcy court to reopen the bankruptcy proceeding.  See Docket Sheet, 05-
31723-BKC-PGH.

admitted to the Maryland Bar. <u>See</u> Second Am. Compl. Ex. 48.[4]  On April 8, 2008, D. Morris

sent a letter to FBI Director Robert Mueller, following up on multiple phone calls made by D.

Morris to the FBI and others starting in the summer of 2007, complaining that he and his wife

had been defrauded by D.H. Zimmer.  Second Am. Compl. Ex. 49.  Copies of the letter were

sent to the Westchester County District Attorney, the Manhattan District Attorney, the United

States Attorney for the Southern District of New York, the FBI Assistant Director in Charge in

New York, and the Attorney Grievance Commission of Maryland.  <u>Id.</u>

      Ultimately, in 2009, the Manhattan District Attorney's Office commenced a prosecution

of D.H. Zimmer, charging him with one count of grand larceny in the second degree for keeping

the money intended to be paid to Plaintiffs in settlement of their NASD arbitration proceeding.

<u>See</u> Second Am. Compl. Ex. 95.  On May 18, 2010, D.H. Zimmer pled guilty to petit larceny, a

class A misdemeanor, and allocuted to taking $72,000 paid by MSDW and intended for

Plaintiffs.  Second Am. Compl. Ex. 96.[5]  Also, on that same day, D.H. Zimmer paid Plaintiffs

$6,000, and it was agreed that if he paid the remaining $66,000 in six months, then on November

18, 2010, D.H. Zimmer would be able to return to court and plead guilty to a violation instead.

<u>Id.</u>

      On November 18, 2010, as part of his sentence in the criminal case, D.H. Zimmer signed

an Affidavit of Confession of Judgment in which he confessed a judgment in favor of Plaintiffs

in the amount of $77,625, arising under the following circumstances:

---

     [4]On May 5, 2009, D.H. Zimmer was disbarred by consent from the Bar of Maryland.
Second Am. Compl. Ex. 75.

     [5]The transcript of the plea allocution attached to the Second Amended Complaint is
missing pages.  A complete transcript is included in Exhibit 4 to Docket # 287.  <u>See</u> Docket #
287-1.

> In July 2004, $83,625,[⁶] the proceeds of a settlement in favor of Daniel
> and Lucille Morris was deposited in an account under my control.  I failed
> to return this money to plaintiffs, and used it for my own purposes.  On
> May 18, 2010 I returned $6,000 to plaintiffs and am therefore justly
> indebted to them in the amount of $77,625.

Second Am. Compl. Ex. 97; see also Pls.' Exs. in Supp. of Mot. Ex. 9 (Affidavit of Confession of

Judgment dated April 20, 2011, changing D.H. Zimmer's address).

On May 20, 2010, Plaintiffs commenced the instant action.  Docket # 1, Complaint.  On

March 11, 2013, Plaintiffs filed the Affidavit of Confession of Judgment in New York State

Supreme Court, New York County, and a Judgment by Confession was entered in their favor

(and against D.H. Zimmer) in the amount of $67,850.  Pls.' Exs. in Supp. of Mot. Ex. 9.[7]

## DISCUSSION

### I.    Standard for Summary Judgment

Under Rule 56, summary judgment should be granted "if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 320-23 (1986).

> Upon any motion for summary judgment pursuant to Rule 56 of
> the Federal Rules of Civil Procedure, there shall be annexed to the
> notice of motion a separate, short and concise statement, in
> numbered paragraphs, of the material facts as to which the moving
> party contends there is no genuine issue to be tried.  Failure to

---

[6]The $83,625 figure is comprised of the $1,125 refund check from the NASD, the $4,000 check from Luan, the $78,000 check from MSDW, a $450 check from Plaintiffs for a pre-arbitration hearing conference that did not take place (see Second Am. Compl. ¶¶ 32-35 & Ex. 34), and $50 in excess fees paid to D.H. Zimmer by Plaintiffs (see Second Am. Compl. ¶¶ 39, 261 & Ex. 33).

[7]Although the total judgment was for $77,625, plus $225 in costs and disbursements, or $77,850 total, the state court credited D.H. Zimmer $10,000 in partial satisfaction of the judgment based on Plaintiffs' receipt of a cashier's check sent by D.H. Zimmer on February 21, 2012.  See Pls.' Exs. in Supp. of Mot. Ex. 9.

> submit such a statement may constitute grounds for denial of the
> motion.

Local Civ. R. 56.1(a).  A dispute about a material fact is "genuine" if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248 (1986).  A trial judge may, therefore, grant summary judgment only if there is

no genuine issue as to any material fact and if the moving party is entitled to judgment as a

matter of law.  See Anderson, 477 U.S. at 250.  The inquiry performed is the threshold inquiry of

determining whether there are any genuine factual issues that properly can be resolved only by a

finder of fact.  Id.

     Under Local Rule 56.1(b), the papers opposing a motion for summary judgment shall

include a correspondingly numbered paragraph responding to each numbered paragraph in the

statement of the moving party, and if necessary, additional paragraphs containing a separate,

short, and concise statement of additional material facts as to which it is contended that there

exists a genuine issue to be tried.  Local Civ. R. 56.1(b).  Summary judgment may be granted

only "[i]f after discovery, the nonmoving party 'has failed to make a sufficient showing on an

essential element of [its] case with respect to which [it] has the burden of proof.' "  Berger v.

United States, 87 F.3d 60, 65 (2d Cir. 1996) (quoting Celotex, 477 U.S. at 323) (alteration in

original).  If the party opposing summary judgment does not respond to the motion, the court

may "grant summary judgment if the motion and supporting materials--including the facts

considered undisputed--show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(3).

However, even where the nonmoving party fails to respond to a motion for summary judgment,

the court

> may not grant the motion without first examining the moving party's
> submission to determine if it has met its burden of demonstrating that no

material issue of fact remains for trial.  If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented.*

D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (quoting Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004)) (emphasis in original).

Moreover, a court should "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in its favor."  Mount Vernon Fire Ins. Co. v. Belize NY, Inc., 277 F.3d 232, 236 (2d Cir. 2002); Farias v. Instructional Sys., Inc., 259 F.3d 91, 97 (2d Cir. 2001); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 764 (2d Cir. 1998); see also Anderson, 477 U.S. at 261 n.2.  Thus, "[o]nly when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted."  Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992) (quoting H.L. Hayden Co. v. Siemans Med. Sys. Inc., 879 F.2d 1005, 1011 (2d Cir. 1989)).

In the case of *pro se* litigants, on a motion for summary judgment, the court reads the pleadings "liberally and interpret[s] them to raise the strongest arguments that they suggest."  Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks and citation omitted).  Nonetheless, "application of this different standard does not relieve [the *pro se* party] of his [or her] duty to meet the requirements necessary to defeat a motion for summary judgment."  Id. (internal quotation marks and citation omitted).[8]  Where *pro se* parties do not adhere to Local Civil Rule 56.1 and its requirements concerning statements of undisputed facts,

_____

[8]Moreover, in a case such as this, where D. Morris is an attorney, Wilkinson is an attorney, and D.H. Zimmer is a former attorney, it is worth noting that "*pro se* attorneys . . . typically cannot claim the special consideration which the courts customarily grant to *pro se* parties."  Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 82 n.4 (2d Cir. 2001) (internal quotation marks and citation omitted).

"[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules . . . . [and] it may in its discretion opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file such a statement." Holtz, 258 F.3d at 73 (citation omitted). "Courts in this Circuit typically forgive a *pro se* plaintiff's failure to file a Local Rule 56.1 Statement, and generally conduct their own independent review of the record." Lloyd v. Holder, No. 11 Civ. 3154, 2013 WL 6667531, at *5 (S.D.N.Y. Dec. 17, 2013) (citation omitted).[9]

## II.   Plaintiffs' Motion for Summary Judgment Against David H. Zimmer

Plaintiffs rely on Your Honor's Memorandum Decision on the Zimmer Defendants' motions to dismiss to establish their entitlement to summary judgment against D.H. Zimmer on their claims for breach of contract, breach of fiduciary duty, fraud, conversion, and misappropriation of funds. In the Memorandum Decision Your Honor stated,

> Zimmer is collaterally estopped from arguing that he did not steal $83,625.00 from plaintiffs and use that money for his own purposes, or that the New York criminal plea and sentence were procured through illicit or fraudulent means. See Blumatte v. Farthing, 320 Fed. App'x 68, 70-71 (2d Cir. 2009) (holding the preclusive effect of a guilty plea made in a formal court proceeding, following a thorough allocution, established that plaintiff stole funds and precluded plaintiff from arguing that others falsely accused him of doing so).

Docket # 99 at 11 n.1. Based on that finding, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiffs are entitled to summary judgment against D.H. Zimmer on all of their claims.

---

[9]In this case, none of the parties filed a Local Civil Rule 56.1 statement denominated as such, and there were a number of instances in which the parties failed to provide citations to admissible evidence in support of what they claimed were undisputed facts. Thus, the Court opted to conduct its own assiduous review of the record.

9

Given that liability has been established, the only issue to be resolved is the quantum of damages that Plaintiffs may recover on their claims.  Although a Judgment by Confession was entered in Plaintiffs' favor (and against D.H. Zimmer) in the amount of $67,850 in state court, Pls.' Exs. in Supp. of Mot. Ex. 9, that judgment includes $225 in costs associated with entry of the judgment.[10]  Accordingly, that $225 amount should not be included in any judgment entered in this case.  In addition, the Judgment by Confession includes an offset of $10,000 in partial satisfaction based on Plaintiffs' receipt of a $10,000 cashier's check from D.H. Zimmer on which the remitter is Aaron Morgan Group.  Id.  However, Plaintiffs contest the propriety of including such an offset, stating that "Plaintiffs have no civil claim against the Aaron Morgan Group and Plaintiffs are not the victims of a crime perpetrated by Aaron Morgan Group. . . ."  Pls.' Affirmation in Supp. of Pls.' Notice of Mot. for Summ. J. against D.H. Zimmer (Docket # 322) ¶ 53.  Plaintiffs assert that the Aaron Morgan Group, LLC is D.H. Zimmer's current business, and they "request the Court to require ZIMMER to acknowledge that he has authority to send Plaintiffs money from the Aaron Morgan Group in partial satisfaction of the money he agreed to pay Plaintiffs as part of the plea bargain before the New York City Criminal Court that is in place."  Id. ¶¶ 54-55.  However, Plaintiffs cite no legal authority, and the Court is not aware of any, that stands for the proposition that a third party may not contribute to the satisfaction of a judgment against a judgment debtor.[11]  Thus, the $10,000 should be included as an offset.

---

[10]An offset of $6,000 had already been applied to the $83,625 amount based on the payment made by D.H. Zimmer on May 18, 2010, the day of his plea allocution.  See Second Am. Compl. Ex. 96.

[11]Rather, in the section entitled, "Effect of Release of or Payment by or on Behalf of One of Several Tortfeasors," the Restatement (Second) of Torts states,

A payment by any person made in compensation of a claim for a harm for

Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that

Plaintiffs are entitled to the entry of a judgment against D.H. Zimmer in the principal amount of

$67,625.[12]

Aside from the amount of the judgment based on the sums admittedly stolen from

Plaintiffs by D.H. Zimmer, Plaintiffs argue at length in their motion papers about the calculation

of additional damages to which they claim to be entitled, including their resurrection of

arguments concerning claims which are not included in the Second Amended Complaint.  See

Pls.' Mem. of Law in Supp. of Pls.' Mot. for Summ. J. against D.H. Zimmer (Docket # 321) at 2-

22.  Thus, Plaintiffs once again argue for relief under New York Judiciary Law § 487[13] and upon

---

which others are liable as tortfeasors diminishes the claim against the
tortfeasors, at least to the extent of the payment made, whether or not the
person making the payment is liable to the injured person and whether or
not it is so agreed at the time of payment or the payment is made before or
after judgment.

Restatement (Second) of Torts § 885(3) (1979).

[12]It is well settled that Plaintiffs are not entitled to double recovery for the same debt.
See, e.g., World Wrestling Entm't, Inc. v. Jakks Pacific, Inc., 425 F. Supp. 2d 484, 514
(S.D.N.Y. 2006) ("The one satisfaction rule states that a plaintiff may not recover twice for the
same injury. . . . To the extent that the damages that may be established in the two actions may
prove identical, there can be but one satisfaction.") (internal quotations, alteration, and citations
omitted), aff'd, 328 F. App'x 695 (2d Cir. 2009).  Therefore, in the event that the state judgment
is partially or fully satisfied in the amount of $67,625 or more, then proof of such satisfaction
shall also serve as proof of satisfaction of this portion of the judgment.  Under no circumstances
should Plaintiffs be permitted to collect on both judgments.

[13]Under Judiciary Law § 487, not only do Plaintiffs seek treble damages, but they also
seek to recover the additional sum of $8,500 in attorneys' fees that they had paid to D.H.
Zimmer.  See Pls.' Notice of Mot. for Summ. J. against D.H. Zimmer (Docket # 320) ¶¶ 16-19.
However, there is nothing in the statute regarding the reimbursement of attorneys' fees as any
part of an award in a civil action.  See N.Y. Jud. Law § 487(2) ("An attorney or counselor who . .
. wilfully receives any money or allowance for or on account of any money which he [or she] has
not laid out, or becomes answerable for, [i]s guilty of a misdemeanor, and in addition to the
punishment prescribed therefor by the penal law, he [or she] forfeits to the party injured treble

a claim for attorney malpractice, even though such claims are not included in their Second

Amended Complaint, and even though Your Honor has overruled their objections to the denial

of Plaintiffs' request to further amend the Second Amended Complaint.  <u>See</u> Docket # 306.[14]

Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that

Plaintiffs' motion for summary judgment against D.H. Zimmer should be denied insofar as it

seeks the entry of judgment on claims under New York Judiciary Law § 487 and for attorney

malpractice.[15]

**<u>Prejudgment Interest</u>**

    To the extent that Plaintiffs seek summary judgment on their claim that D.H. Zimmer

agreed to pay them 8% interest from July 1, 2004, on the "principal balance" he owed to

-----

damages, to be recovered in a civil action.").  Moreover, although Plaintiffs cite to the case of
<u>Burton v. Kaplan</u>, 184 A.D.2d 408 (1st Dep't 1992) in support of their claim for the additional
$8,500 in fees, <u>see</u> Pls.' Affirmation in Supp. of Pls.' Notice of Mot. for Summ. J. against D.H.
Zimmer (Docket # 322) ¶ 114, that case states, "[D]efendant must forfeit the fee retained from
the proceedings of the settlement which he had negotiated.  An attorney has no right to
compensation *where he has been discharged for cause*."  <u>Id.</u> at 409 (emphasis added) (citation
omitted).  In this case, there is neither an allegation nor evidence that D.H. Zimmer was
discharged by Plaintiffs for cause; thus <u>Burton</u> is inapposite.

    [14]The Court notes that during the pendency of the motions for summary judgment,
Plaintiffs have filed, without seeking leave of the Court, a "Substitute Memorandum of Law"
(Docket # 371) in support of their motion to add grounds for relief – the motion resolved by
Your Honor's Memorandum Decision (Docket # 306).  In light of the already voluminous
submissions received from Plaintiffs on the motions for summary judgment, the Court declines
to address this unexpected filing in this Report and Recommendation.

    [15]It is worth noting that New York Judiciary Law § 487 is not simply a form of relief, as
Plaintiffs contend, but rather, is a statute providing for a cause of action.  This is evidenced by
case law addressing the statute of limitations applicable to such a cause of action.  <u>See</u>, <u>e.g.</u>,
<u>Melcher v. Greenberg Traurig, LLP</u>, 102 A.D.3d 497, 499 (1st Dep't 2013) ("An 'action to
recover upon a liability, penalty or forfeiture created or imposed by statute . . .' must be
commenced within three years (CPLR 214 [2] ).  A cause of action under Judiciary Law § 487 is
purely statutory in nature and therefore subject to the three-year statute of limitations.").

Plaintiffs, I conclude, and respectfully recommend that Your Honor should conclude, that summary judgment on such claim should be denied. Plaintiffs base this claim on a memorandum allegedly sent by D.H. Zimmer to Wilkinson in which Zimmer states, "Consistent with our discussion of earlier today, this memorandum confirms that Daniel Morris is entitled to the first $72,000, plus interest of 8% from July 1, 2004 on the principal balance, of the proceeds of the 'Georgia' case." See Second Am. Compl. Ex. 41. However, given the preclusive effect of the plea allocution and Affidavit of Confession of Judgment, Plaintiffs are estopped from seeking to recover any additional dollar amounts in the form of interest based on an alleged promise made to them by D.H. Zimmer months after he had stolen their money.[16]

In any event, Plaintiffs are entitled to statutory prejudgment interest at the rate of 9% per annum on their claims against D.H. Zimmer, which they seek to have computed from July 1, 2004. See CPLR §§ 5001, 5002, 5004.[17] With respect to the date from which prejudgment

---

[16]Indeed, Plaintiffs do not claim that this memorandum binds them to recovery of a principal amount of only $72,000, but rather, they rely upon the plea allocution and its preclusive effect in arguing that the principal amount upon which any award of interest should be based is $83,625. Moreover, the evidence offered in support of this claim does not establish that such a promise was actually communicated by D.H. Zimmer to D. Morris; rather, the communication to Wilkinson has no binding effect on any agreement between D.H. Zimmer and D. Morris.

[17]The New York statute sets forth actions in which prejudgment interest up until the date of verdict, report, or decision is recoverable:

> Interest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion.

CPLR § 5001(a).
The statute further provides for interest from the date of verdict, report, or decision to the entry of judgment as follows:

13

interest should be computed, New York law states,

> Interest shall be computed from the earliest ascertainable date the cause of
> action existed, except that interest upon damages incurred thereafter shall
> be computed from the date incurred. Where such damages were incurred
> at various times, interest shall be computed upon each item from the date
> it was incurred or upon all of the damages from a single reasonable
> intermediate date.

CPLR § 5001(b).  "Accordingly, where damages are incurred at various times after the cause of

action accrues, section 5001 grants courts wide discretion in determining a reasonable date from

which to award pre-judgment interest."  Conway v. Icahn & Co., Inc., 16 F.3d 504, 512 (2d Cir.

1994) (citation omitted).

In his plea allocution, D.H. Zimmer admitted that on July 15, 2004, and July 21, 2004, he

took "approximately $72,000 that did not belong to [him] from Morgan Stanley."  Docket # 287-

1, Ex. 4 at 4.[18]  However, since the record presented in this case shows that D.H. Zimmer

converted various sums of money on different dates, culminating in the deposit of the $78,000

check from MSDW on July 21, 2004, I conclude, and respectfully recommend that Your Honor

should conclude, that July 21, 2004, is a reasonable date from which to award prejudgment

---

> Interest shall be recovered upon the total sum awarded, including interest
> to verdict, report or decision, in any action, from the date the verdict was
> rendered or the report or decision was made to the date of entry of final
> judgment.  The amount of interest shall be computed by the clerk of the
> court and included in the judgment.

CPLR § 5002.
   CPLR § 5004 sets the statutory rate of interest at 9% per annum.

[18]This error in the amount of money that D.H. Zimmer allocuted to stealing was rectified
by the Affidavit of Confession of Judgment which he signed and submitted to the court in the
criminal proceeding on November 18, 2010.  See Docket # 287-1, Ex. 1 ¶ 3 ("I confess that the
debt arose under the following circumstances:  In July 2004, $83,625, the proceeds of a
settlement in favor of Daniel and Lucille Morris was deposited in an account under my
control.").

interest.[19]

**Post-judgment Interest**

Although Plaintiffs also seek the recovery of post-judgment interest at the rate of 9% per annum pursuant to CPLR §§ 5003 and 5004, they are only entitled to recover post-judgment interest at the rate provided for in 28 U.S.C. § 1961. See Cappiello v. ICD Publ'ns, Inc., 720 F.3d 109, 113 (2d Cir. 2013) ("By its plain terms, § 1961 applies to this case. As the district court noted, the statute's language applies to 'any money judgment in a civil case recovered in a district court,' 28 U.S.C. § 1961 (emphasis added), and it makes no exception for judgments rendered in diversity actions or judgments subsequently registered in state court.") (citations omitted). The amount of post-judgment interest is based on a calculation dependent upon the weekly average 1-year constant Treasury yield, so neither the rate nor the amount can be calculated in advance of the judgment.

**Punitive Damages**

Finally, with respect to Plaintiffs' claim that they are entitled to the recovery of punitive damages, under New York law, "Punitive damages are permitted when the defendant's wrongdoing is not simply intentional but 'evince[s] a high degree of moral turpitude and

---

[19]The initial check converted by D.H. Zimmer, in the amount of $1,125, was posted to the SunTrust bank account on June 7, 2004. Second Am. Compl. Ex. 38. The second check, in the amount of $4,000, was deposited into the SunTrust bank account on July 2, 2004. Pls.' Exs. in Supp. of Mot. Ex. 43. The third and final check, in the amount of $78,000, was deposited into the SunTrust bank account on July 21, 2004. Second Am. Compl. Ex. 27. The $83,625 amount confessed by D.H. Zimmer also included $450, based on a check that D.H. Zimmer received from Plaintiffs for a pre-arbitration hearing conference that did not take place (see Second Am. Compl. ¶¶ 32-35 & Ex. 34), and $50 in excess fees paid to D.H. Zimmer by Plaintiffs (see Second Am. Compl. ¶¶ 39, 261 & Ex. 33). The Court finds that this additional $500 in damages was incurred on June 21, 2004, the date on which the settlement of the NASD arbitration was finalized.

demonstrate[s] such wanton dishonesty as to imply a criminal indifference to civil obligations.' "

Ross v. Louise Wise Servs., Inc., 8 N.Y.3d 478, 489 (2007) (quoting Walker v. Sheldon, 10

N.Y.2d 401, 405 (1961)).  In addition, "punitive damages may be sought when the wrongdoing

was deliberate and has the character of outrage frequently associated with crime." Id. (internal

quotation marks and citation omitted); see also, e.g., Offei v. Omar, No. 11 Civ. 4283, 2012 WL

2086294, at *7 (S.D.N.Y. May 18, 2012) (awarding punitive damages to the plaintiff in a civil

action asserting common-law claims for assault and battery, false imprisonment and intentional

infliction of emotional distress where the defendant had pled guilty to a misdemeanor charge of

sexual abuse in the third degree), adopted by, 2012 WL 2086356 (S.D.N.Y. June 8, 2012).  Here,

D.H. Zimmer's conduct was the basis for a criminal conviction in New York following the entry

of a guilty plea.  Accordingly, I conclude, and respectfully recommend that Your Honor should

conclude, that Plaintiffs may seek an award of punitive damages on their claims against D.H.

Zimmer.  However, whether or not to award Plaintiffs punitive damages, and the amount of such

an award, if any, needs to be determined at a trial limited to these issues. See Nardelli v.

Stamberg, 44 N.Y.2d 500, 503 (1978) ("Whether to award punitive damages in a particular case,

as well as the amount of such damages, if any, are primarily questions which reside in the sound

discretion of the original trier of the facts . . . .") (citations omitted).

**III.   Plaintiffs' Motion for Summary Judgment Against the Other Zimmer Defendants
and the Other Zimmer Defendants' Motion for Summary Judgment Against
Plaintiffs**

Plaintiffs assert a single claim against D.H. Zimmer's family members, i.e., the Other

Zimmer Defendants.  As set forth in the Second Amended Complaint, Plaintiffs' claim against

the Other Zimmer Defendants is for restitution of funds conveyed by D.H. Zimmer, as Plaintiffs'

fiduciary, to the Other Zimmer Defendants, as third party transferees, without Plaintiffs'

authorization and consent.  Second Am. Compl. ¶ 1(g).  Plaintiffs allege that when D.H. Zimmer deposited their money into the bank account of Complete Auctions, the Other Zimmer Defendants, based on their status as managing members of Complete Auctions, took possession of Plaintiffs' money as third party transferees.  Plaintiffs further allege that the Other Zimmer Defendants knew or should have known that D.H. Zimmer was holding that money in trust for Plaintiffs.

It is established that only D.H. Zimmer and S. Zimmer were managing members of Complete Auctions at the time that Plaintiffs' money was deposited into the Complete Auctions bank account.  Pls.' Exs. in Supp. of Mot. Ex. 19 (Complete Auctions 2004 Annual Report dated May 9, 2004).  D.M. Zimmer and D. Zimmer did not become managing members until June 7, 2005.  Id. (Complete Auctions 2005 Annual Report dated June 7, 2005).  Thus, Plaintiffs cannot seek to hold D.M. Zimmer and D. Zimmer liable for the unlawful acts which were committed by D.H. Zimmer in July of 2004 based on their status as managing members.  Moreover, Plaintiffs provide no legal support for their claim that, by dint of one's status as a managing member of an LLC, that individual becomes a third party transferee of any funds placed into the LLC's bank account.

Plaintiffs argue that D.H. Zimmer, as their attorney, held their money in trust for their benefit, and that when D.H. Zimmer deposited their "trust" into the Complete Auctions account, each of the Other Zimmer Defendants in turn held Plaintiffs' money in trust for Plaintiffs' benefit as well.  The Florida LLC statute (Complete Auctions was a Florida LLC) states that "each manager and managing member shall owe a duty of loyalty and a duty of care to the limited liability company and all of the members of the limited liability company," F.S.A. § 608.4225(1) (emphasis added), and the duty of loyalty is limited to, among other things, "[a]ccounting to the

17

limited liability company and holding as trustee for the limited liability company any property,

profit, or benefit derived by such manager or managing member in the conduct or winding up of

the limited liability company business or derived from a use by such manager or managing

member of limited liability company property, including the appropriation of a limited liability

company opportunity." F.S.A. § 608.4225(1)(a) (emphases added).  As stated in the statute, the

holding of "any property, profit, or benefit" as trustee "for the limited liability company" is part

of the duty of loyalty owed by managers and managing members to the LLC and its members,

F.S.A. § 608.4225, not part of any duty owed by the Other Zimmer Defendants to Plaintiffs, who

are non-members.  Thus, Plaintiffs cannot base their claim against the Other Zimmer Defendants

on alleged breaches of these duties under the Florida LLC statute.  See United Credit Recovery,

LLC v. Bexten, No. 6:11–cv–1714–Orl–31KRS, 2012 WL 3854536, at *4 (M.D.Fla. Sept. 5,

2012) (noting that "the duties imposed by Section 608.4225 are owed to the LLC and its

members" and dismissing claim asserted by non-member under F.S.A. § 608.4225).[20]

    Likewise, Plaintiffs' reliance on Beaubien v. Cambridge Consol., Ltd., 652 So.2d 936

(Fla. Dist. Ct. App. 5th Dist. 1995) – a case in which beneficiaries of a trust sued the corporation

which had been designated the trustee of the trust, as well as an individual who, as director of the

corporation, managed the trust – is misplaced.  In that case, the court stated, "It is well settled

that an individual acting for a corporate trustee may be personally liable to third persons injured

by his [or her] actions even if the individual was acting as agent for the corporation.  Such

_____

[20]Just as this statutory provision does not give rise to a claim on the part of non-members
of an LLC, there is nothing in the language of F.S.A. § 608.4225(1)(a) that creates a statutory
trust for Plaintiffs' benefit.  Thus, Plaintiffs' attempt to analogize the Florida LLC statute to the
Perishable Agricultural Commodities Act ("PACA"), which expressly creates a statutory trust,
see 7 U.S.C. § 499e(c) ("Trust on commodities and sales proceeds for benefit of unpaid
suppliers, sellers, or agents; preservation of trust; jurisdiction of courts"), fails.

corporate agents owe duties not only to the corporation, but also to the beneficiaries of a trust administered by the corporation. William Fratcher, IV *Scott on Trusts,* § 326.3 (1989)." Id. at 938 (footnote omitted).  However, there is no allegation in this case that Complete Auctions was the corporate trustee for a legally established trust created for Plaintiffs' benefit.  Rather, Plaintiffs claim that D.H. Zimmer received the proceeds from the NASD settlement as attorney and in trust for Plaintiffs[21] and that Complete Auctions (and, somehow, the Other Zimmer Defendants) in turn received that money subject to such trust.  Again, it is unclear how this creates a duty running from the Other Zimmer Defendants, as managing members of Complete Auctions, to Plaintiffs, and the legal authority cited by Plaintiffs does not support this theory of liability.

Even if there were any trust relationship between Plaintiffs and any Defendant other than D.H. Zimmer, which there is not, any potential individual liability for the Other Zimmer Defendants would be protected by the corporate structure of Complete Auctions.  To the extent that piercing the corporate veil is a necessary prerequisite to bringing suit against the Other Zimmer Defendants in their capacities as managing members of Complete Auctions, under Florida law,[22] "[t]o 'pierce the corporate veil' three factors must be proven: (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent

---

[21]Plaintiffs conflate the obligation of an attorney, holding money as a fiduciary on behalf of a client, with a legally established free-standing trust.  D.H. Zimmer, the attorney, had an ethical and legal obligation to hold the clients' money "in trust" as the clients' fiduciary, but that obligation does not extend to third parties.

[22]"New York's choice of law rules provide that the law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders."  Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas, 509 F. App'x 54, 56 n.2 (2d Cir. 2013) (internal quotation marks and citation omitted).

existence[] was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused the injury to the claimant." <u>Gasparini v. Pordomingo</u>, 972 So.2d 1053, 1055 (Fla. Dist. Ct. App. 3d Dist. 2008) (citation omitted); <u>see also</u> <u>N. Am. Clearing, Inc. v. Brokerage Computer Sys., Inc.</u>, 666 F. Supp. 2d 1299, 1306 (M.D. Fla. 2009) ("Piercing the corporate veil in Florida traditionally requires two elements: first, 'the corporation is in actuality the alter ego of the stockholders,' and second, 'it was organized or after organization was employed by the stockholders for fraudulent or misleading purposes.' . . . the Florida Courts of Appeal tend to incorporate the elements of causation and damages into the standard for piercing the corporate veil.") (citations omitted). Despite Plaintiffs' arguments that the corporate veil should be pierced in this case, the corporate veil cannot be pierced because causation is lacking, <u>i.e.</u>, there is no proof that Plaintiffs' loss or injury was caused by "the fraudulent or improper use of the corporate form" by the Other Zimmer Defendants.  Indeed, D.H. Zimmer had already committed the torts of fraud, conversion, and breach of fiduciary duty when he failed to convey the NASD settlement proceeds to Plaintiffs, regardless of whether he in turn transferred the money to Complete Auctions. Plaintiffs' injury was caused by the antecedent act of D.H. Zimmer as Plaintiffs' attorney, not by any subsequent act of the Other Zimmer Defendants as managing members of Complete Auctions.

Furthermore, the fact that Plaintiffs assert no claim against Complete Auctions is fatal to their attempt to pierce the corporate veil to impose liability upon the Other Zimmer Defendants:

> [I]t is black letter law in Florida that seeking a determination that a
> shareholder is the "alter ego" of a corporation and therefore liable for the
> corporation's debts, or similarly seeking to pierce the corporate veil of a

> corporation to impose liability on the shareholder for the corporation's
> debts, is not an independent claim or cause of action.  Rather, it is a means
> of imposing liability on the shareholder based on an underlying cause of
> action for which the corporation is liable, including tort liability or
> liability for breach of contract.

In re Fiddler's Creek, LLC, 2010 Bankr. LEXIS 5715, at *6-7 (Bankr. M.D. Fla. Sept. 15, 2010)

(citations omitted).[23]

Insofar as Plaintiffs contend that the Other Zimmer Defendants are foreclosed from

raising the issue of piercing the corporate veil, the Court notes that the Other Zimmer

Defendants stated earlier in the litigation, in the reply papers on their motion to dismiss, "While

not raised prior, in order for Morris to be successful on any of his claims against anyone other

than David H. Zimmer, claims for which were agreed to prior, they would have to prove that the

CompleteAuctions [sic] corporate veil was pierced.  Not only is that highly unlikely, it is not

pleaded with specificity as to any of the named Defendants in any Morris claim."  Mem. of Law

(Docket # 78) at 1-2.  In the decision on the motions to dismiss, Your Honor did not address the

issue of whether Plaintiffs had made allegations in their Second Amended Complaint sufficient

to pierce the corporate veil, nor did Your Honor address any claim asserted against the Other

Zimmer Defendants in the section entitled, "Failure to State a Claim," Docket # 99 at 9-13, most

likely because the main argument forwarded by the Other Zimmer Defendants in favor of

dismissal was laches.  Nevertheless, it does not follow that Plaintiffs have thus succeeded in

stating a claim against the Other Zimmer Defendants or that liability may be imposed upon them

---

[23]Plaintiffs' reliance on one of the filings in the Florida Bankruptcy proceedings to establish that Complete Auctions was the "alter ego" of D.H. Zimmer and S. Zimmer fails because the document relied upon is a pleading containing only allegations, not findings of fact by the bankruptcy judge.  See Second Am. Compl. Ex. 100 (Amended Complaint Objecting to Debtors' Discharge Pursuant to 11 U.S.C. Section 727, Dischargeability Pursuant to 11 U.S.C. Section 523, and For Imposition of Equitable Lien).

without a basis in law. In their summary judgment motion papers, Plaintiffs now cite to Fed. R. Civ. P. 15(b)(2) to argue that the Other Zimmer Defendants have waived any claim that personal liability cannot be imposed upon them without piercing the corporate veil. "Rule 15(b)(2) states that '[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings.' The Rule also applies to summary judgment motions." Kinder v. City of Salamanca, No. 10–CV–00248, 2012 WL 7827841, at *6 (W.D.N.Y. Mar. 30, 2012) (citations omitted), adopted by, 2013 WL 1284336 (W.D.N.Y. Mar. 28, 2013). The Court finds that contrary to Plaintiffs' argument, the issue of piercing the corporate veil has been litigated by the parties on their motions for summary judgment and, accordingly, the Court will treat it as if it had been raised in the pleadings.

Plaintiffs also rely on the "common law of trusts" and the Restatement (Third) of Trusts in arguing that the Other Zimmer Defendants may be held liable as subsequent transferees of the "trust" held by D.H. Zimmer for Plaintiffs' benefit. The Restatement (Third) states as follows with respect to third party liability:

> § 108. Limitation On Third–Party Liability
>
> (1) A third party is protected from liability in dealing with or assisting a trustee who is committing a breach of trust if the third party does so without knowledge or reason to know that the trustee is acting improperly.
> (2) A third party who acquires an interest in trust property through a breach of trust is entitled to retain or enforce the interest to the extent the third party is protected as a bona fide purchaser.
> (3) In dealing with a trustee, a third party need not:
>> (a) inquire into the extent of the trustee's powers or the propriety of their exercise; or
>> (b) ensure that assets transferred to the trustee are properly applied to trust purposes.

Restatement 3d Trusts § 108. In this case, although Plaintiffs argue that the Other Zimmer Defendants as managing members of Complete Auctions are the "third party" who acquired an

interest in Plaintiffs' trust, the third party is actually Complete Auctions.[24]  To the extent that

Plaintiffs' money was transferred to Complete Auctions, Complete Auctions would be the proper

defendant with respect to their claim and, insofar as Plaintiffs would seek to impose liability

upon the Other Zimmer Defendants as managing members of Complete Auctions, they would

have to demonstrate the appropriateness of piercing the corporate veil which, as discussed above,

they are unable to do.

Plaintiffs nonetheless attempt to impute liability to the Other Zimmer Defendants by

citing to a sentence from the Other Zimmer Defendants' motion to dismiss in which they state,

"[a]t no point post discovering Morris revoked his authorization to deposit funds into Complete

Auctions did Defendant deny Morris was due a refund."  Docket # 77 at 9.  Plaintiffs view this as

some sort of admission that the Other Zimmer Defendants knew that they had Plaintiffs' money,

but this view is flawed because (1) the next sentence in the brief states that "Defendant entered

---

[24]Plaintiffs repeatedly make this leap in logic, contending that the Other Zimmer
Defendants are liable to Plaintiffs because Plaintiffs' "trust" was transferred by D.H. Zimmer
directly to the Other Zimmer Defendants as managing members of Complete Auctions when, in
reality, their "trust" was transferred to Complete Auctions.  To the extent that Plaintiffs rely on
the Seventh Circuit case of Boyer v. Belavilas, 474 F.3d 375 (7th Cir. 2007), for the notion that
the Other Zimmer Defendants are jointly and severally liable to Plaintiffs as transferees of
Plaintiffs' money, their reliance is misplaced.  That case involved a mother's transfer of insurance
proceeds to her children's custodial accounts under the Uniform Transfers to Minors Act
("UTMA") in order to avoid payment of those monies into her husband's bankruptcy estate.  The
court noted that with UTMA accounts, title to the funds in the account vests in the beneficiary,
i.e., the minor children, and thus, the children could be held liable for monies transferred into
their UTMA accounts.  Nonetheless, the Seventh Circuit held that the minor children "are not
personally liable, and that their obligations are limited to funds in or traceable to the custodial
accounts." Id. at 379.  The decision in Boyer v. Belavilas has no bearing on this case, since it
dealt with fraudulent conveyances in the context of a bankruptcy proceeding and involved
application of the bankruptcy code and the law governing UTMA accounts.  In this case, the
account into which Plaintiffs' funds were transferred belonged to Complete Auctions, not the
Other Zimmer Defendants, and there is no basis to hold the Other Zimmer Defendants personally
liable, as Plaintiffs seek to do, for D.H. Zimmer's transfer of Plaintiffs' money into the Complete
Auctions account.

into a Confession of Judgment . . .," i.e., "Defendant" refers to D.H. Zimmer alone, not all the Other Zimmer Defendants as well; and (2) on page 1 of that brief, the Other Zimmer Defendants state that "this matter is between Morris and Defendant husband and the allegations Morris sets forth in his Second Amended Claim [sic] are baseless [emphasis added]."

Finally, Plaintiffs for the first time in their motion papers assert a claim for conversion against the Other Zimmer Defendants, alleging that "[e]ach of the Other Zimmer Defendants are wrongfully exercising dominion and control over Plaintiffs' $83,625 because they have legal title to it (as described in detail above) as a member or managing member of Complete Auctions . . . under Florida LLC law."  Pls.' Affirmation in Supp. of Pls.' Notice of Mot. for Summ. J. against Other Zimmer Defs. (Docket # 325) ¶ 203; see id. ¶¶ 201-06.  However, the argument that the Other Zimmer Defendants had legal title to Plaintiffs' money based on their status as managing members of Complete Auctions is based on Plaintiffs' claim that when D.H. Zimmer placed their money, which he held in trust, into the Complete Auctions account, the Other Zimmer Defendants became trustees of Plaintiffs' trust.  As explained above, this is an erroneous interpretation of Florida LLC law.  Accordingly, Plaintiffs' attempt to assert a conversion claim against the Other Zimmer Defendants fails.[25]

───────────────────

[25]Plaintiffs also make a passing reference to the Florida Uniform Fraudulent Transfer Act ("FUFTA") in their papers filed in opposition to the Other Zimmer Defendants' motion for summary judgment.  See Pls.' Affirmation in Opp. to Other Zimmer Defs.' Mot. for Summ. J. (Docket # 352) ¶ 88 ("Shortly after ZIMMER fraudulently deposited Plaintiffs' money that he admitted criminally stealing from Plaintiffs, which is a fraudulent transfer under the Florida Uniform Fraudulent Transfer Act.").  It is unclear to the Court whether by this statement in their opposition papers Plaintiffs intend to allege a claim under FUFTA, but no such claim is alleged in the Second Amended Complaint.  By failing to include such a claim in the Second Amended Complaint, and instead raising it for the first time in opposition to a motion for summary judgment, Plaintiffs have waived it.  See, e.g., Malmsteen v. Universal Music Grp., Inc., 940 F. Supp. 2d 123, 135 (S.D.N.Y. 2013) ("Because Malmsteen failed to include this claim in his Amended Complaint, instead raising it for the first time in opposition to summary judgment, it is

In addition, insofar as it appears that Plaintiffs are asserting claims for aiding and abetting D.H. Zimmer's conversion and breach of fiduciary duty, see Second Am. Compl. ¶¶ 472, 473, 482, 483, 494, 495 (alleging that "MR. MORRIS questions whether" each of the Other Zimmer Defendants "participated in ZIMMER's conversion of MORRIS' property . . . into the property of Complete Auctions" and "participated in ZIMMER's breach of fiduciary duty and breach of fiduciary obligation to MORRIS to pay MORRIS what they are owed . . . ."), there is no evidence to support such claims. "Under New York law, the elements of aiding and abetting a breach of fiduciary duty, aiding and abetting a conversion, and aiding and abetting a fraud are substantially similar. The claims require the existence of a primary violation, actual knowledge of the violation on the part of the aider and abettor, and substantial assistance." Weshnak v. Bank of America, N.A., 451 F. App'x 61, 61-62 (2d Cir. 2012) (internal quotation marks and citations omitted). In this case, Plaintiffs fail to provide evidence that the Other Zimmer Defendants had any actual knowledge of D.H. Zimmer's conversion and/or breach of fiduciary duty to Plaintiffs when he failed to transmit the NASD settlement proceeds to Plaintiffs and instead deposited them into the Complete Auctions bank account, nor do Plaintiffs provide evidence that the Other Zimmer Defendants furnished any assistance, let alone substantial assistance, to D.H. Zimmer in committing these violations.[26] Accordingly, Plaintiffs' attempt to

waived.") (footnote omitted) (collecting cases).

[26]In a case involving a claim for aiding and abetting a breach of fiduciary duty, the Second Circuit noted that "[l]ower courts disagree whether conscious avoidance is legally equivalent to actual knowledge." Krys v. Butt, 486 F. App'x 153, 157 n.5 (2d Cir. 2012) (citing cases). But here, as in Krys, which was decided in the context of a motion to dismiss, "[t]he complaint . . . does not allege facts plausibly suggesting that [the Other Zimmer Defendants] actually suspected a breach of fiduciary duty and willfully avoided confirming [their] suspicions." Id. Rather, Plaintiffs argue that the Other Zimmer Defendants were required by the Florida LLC statute to conduct an accounting of Complete Auctions which, they contend, would

assert claims for aiding and abetting conversion and breach of fiduciary duty likewise fail.

In sum, based on the foregoing, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiffs' motion for summary judgment against the Other Zimmer Defendants should be denied, the Other Zimmer Defendants' motion for summary judgment against Plaintiffs should be granted, and the claims against the Other Zimmer Defendants should be dismissed.

IV.     **Plaintiffs' Motion for Summary Judgment Against Wilkinson and**
        **Wilkinson's Motion for Summary Judgment Against Plaintiffs**

In the Second Amended Complaint, Plaintiffs assert a single claim against Wilkinson for specific performance of a contract, alleging that Wilkinson was obligated to pay them D.H. Zimmer's share of the proceeds of the "Georgia Matter" based on an agreement between D.H. Zimmer and Wilkinson of which Plaintiffs claim they were third-party beneficiaries.  In their motion papers, Plaintiffs state that the "contracts Plaintiffs seek to specifically enforce to their benefit are the Facilitating and Enhancing Agreements and/or the Civil Action Agreements ('R/K Agreements')."  Pls.' Mem. of Law in Supp. of Mot. for Summ. J. against Wilkinson (Docket # 327) at 10.[27]

_____

have revealed that D.H. Zimmer had wrongfully deposited Plaintiffs' "trust" into the Complete Auctions bank account.  See Pls.' Mem. of Law in Supp. of Pls.' Mot. for Summ. J. against Other Zimmer Defs. (Docket # 324) at 18-19 ("Each of the Other Zimmer Defendants had under Florida LLC law a duty of accounting which if 'pursued with reasonable intelligence and diligence would give him [or her] knowledge or reason to know that the trustee [ZIMMER] is committing a breach of trust' when he put Plaintiffs' money into CA LLC.").  However, as explained elsewhere, Plaintiffs misread the Florida LLC statute.

    [27]The Court rejects Plaintiffs' attempts to assert for the first time in their moving and opposition papers new equitable claims for recovery against Wilkinson, including the imposition of an equitable lien or an implied trust.  See footnote 25, supra (citing Malmsteen v. Universal Music Group, Inc., 940 F. Supp. 2d 123, 135 (S.D.N.Y. 2013); see also, e.g., Giovia v. Kiamesha Concord, Inc., No. 92 Civ. 3935, 1993 WL 539530, at *5 (S.D.N.Y. Dec. 23, 1993) (court

26

>        To succeed on a third-party beneficiary theory under New York
> law,[28] a non-party must be the intended beneficiary of the contract, not
> an incidental beneficiary to whom no duty is owed.  A party asserting
> rights as a third-party beneficiary must establish (1) the existence of a
> valid and binding contract between other parties, (2) that the contract
> was intended for his [or her] benefit and (3) that the benefit to him [or her] is
> sufficiently immediate, rather than incidental, to indicate the assumption
> by the contracting parties of a duty to compensate him [or her] if the
> benefit is lost.

Noveck v. PV Holdings Corp., 742 F. Supp. 2d 284, 295-96 (E.D.N.Y. 2010) (internal quotation

marks and citations omitted), aff'd, appeal dismissed sub nom. Noveck v. Avis Rent A Car

System, LLC, 46 F. App'x 370 (2d Cir. 2011).

        As the district court in Noveck further explained,

>        New York follows the Restatement (Second) of Contracts § 302 in
> allowing a third party to enforce a contract if that third party is an
> intended beneficiary of the contract.  Flickinger v. Harold C. Brown &
> Co., 947 F.2d 595, 600 (2d Cir. 1991).  Section 302(1) provides:
>
>>        Unless otherwise agreed between promisor and promisee, a
>> beneficiary of a promise is an intended beneficiary if recognition of a
>> right to performance in the beneficiary is appropriate to effectuate the
>> intention of the parties and either (a) the performance of the promise
>> will satisfy an obligation of the promisee to pay money to the
>> beneficiary; or (b) the circumstances indicate that the promisee
>> intends to give the beneficiary the benefit of the promised
>> performance.
>
>        In determining whether a third-party beneficiary exists, courts look at the
> surrounding circumstances as well as the agreement.  Septembertide
> Publishing, B.V. v. Stein & Day, Inc., 884 F.2d 675, 679 (2d Cir. 1989).
> "The best evidence, however, of whether the contracting parties intended a
> benefit to accrue to a third party can be ascertained from the words of the
> contract itself." Alicea v. City of New York, 145 A.D.2d 315, 318, 534

refused to consider allegations absent from the pleadings on a motion for summary judgment).

        [28]The parties have assumed that New York law applies to this claim, although Wilkinson
is a resident of Georgia, and D.H. Zimmer is a resident of New Jersey (and may have been a
resident of Florida at the time of entering into any alleged agreement with Wilkinson).

N.Y.S.2d 983 (1st Dep't 1988).  Nonetheless, "it is well-settled that the obligation to perform to the third party beneficiary need not be expressly stated in the contract."  Trans–Orient Marine Corp. v. Star Trading & Marine, Inc., 925 F.2d 566, 573 (2d Cir. 1991).  "An intent to benefit a third party can . . . be found when no one other than the third party can recover if the promisor breaches the contract . . . or . . . the language of the contract otherwise clearly evidences an intent to permit enforcement by the third party." Alicea, 145 A.D.2d at 318, 534 N.Y.S.2d 983.

Id. at 296; see also Bellis v. Tokio Marine & Fire Ins. Co., Ltd., No. 93 Civ. 6549, 2004 WL 1637045, at *4 (S.D.N.Y. July 20, 2004) ("To delineate the difference between 'intended' and 'incidental' beneficiaries, New York courts first look to the words of the contract itself.  Even so, the Second Circuit has noted that a party need not necessarily be specifically mentioned in a contract to be considered a third-party beneficiary, though the parties' intent to benefit the third party must be apparent from the face of the contract.  New York courts also examine whether the performance is rendered directly to a third party, in which case that party is generally considered an intended beneficiary of the contract.  Finally, New York courts absent clear contractual language evincing such intent are clearly reluctant to interpret circumstances to construe such intent to confer contractual rights on unnamed third-parties.") (internal quotation marks, alterations, and citations omitted).

In looking at the agreements provided to the Court, there is nothing contained in those agreements evidencing any intent at all to make Plaintiffs the intended beneficiaries thereof.  The Reese and Karamolengos Facilitating and Enhancing Agreements (both of which are entitled "Retainer Agreement") were both entered into on March 30, 2002, well before D.H. Zimmer incurred any liability to Plaintiffs for the NASD arbitration settlement funds.  See Docket # 282, Ex. 5.  Moreover, those agreements are between D.H. Zimmer and each of his respective clients, Reese and Karamolengos.  Wilkinson is not a party to either of those agreements; therefore,

28

those agreements cannot form the basis for Plaintiffs' claim against Wilkinson for specific performance of a contract. Moreover, the retainer agreements clearly and unambiguously state that they set forth "the terms and conditions upon which Zimmer will perform legal and advisory services . . . with respect to Civil Action #00V0664A, Armstrong, et al. v. Durango Georgia Paper Company, Inc." Id. Therefore, these agreements were only applicable to Civil Action #00V0664A, an action brought in Georgia state court, see Pls.' Notice of Mot. for Summ. J. against Wilkinson (Docket # 326) ¶¶ 8 &10, not to the "Georgia Matter" referenced throughout the Second Amended Complaint, which was commenced in federal court on May 10, 2002, Armstrong, et al. v. Durango Georgia Paper Co., 2:02-cv-00085-AAA-JEG (S.D. Ga.).

Likewise, with respect to the Civil Action Contingency Agreements entered into in connection with the "Georgia Matter," these agreements date from April 4, 2003 (with Reese), and April 30, 2003 (with Karamolengos), well before D.H. Zimmer had incurred any liability to Plaintiffs. See Docket # 282, Ex. 6.[29] Thus, D.H. Zimmer could not have entered into these agreements with the intention of fulfilling his obligation to Plaintiffs through recovery of these attorneys' fees. These agreements are between either Reese or Karamolengos as "Client" and Charles L. Wilkinson, III, Jack R. Ormes, and David Zimmer as "Attorneys" and state with respect to fees only that "Client will pay to the Attorneys for services rendered 40 percent of all sums recovered in any manner prior to or after filing a lawsuit or comparable proceeding. Such fee shall be based on the total recovery prior to deducted expenses of litigation, court costs, and other costs of this action." Id. There is nothing in these agreements regarding the way in which the "Attorneys" would split the fee among themselves or regarding any specific obligation owed

---

[29]The copies of the Agreements submitted to the Court are only signed by Wilkinson and D.H. Zimmer, not Jack Ormes, the third attorney participating in the fee-splitting arrangement.

by Wilkinson to D.H. Zimmer that could form the basis for Plaintiffs' claim as intended third-party beneficiaries of these contracts.

  In sum, Plaintiffs' claim is based solely on what D.H. Zimmer told them, long after the contracts had been entered into, regarding their status as intended beneficiaries of his agreement to split attorneys' fees with Wilkinson (as well as with Ormes, although for reasons unknown, D.H. Zimmer did not mention his name to Plaintiffs).  Indeed, as Plaintiffs state in their memorandum of law in support of their motion for summary judgment against Wilkinson:

> Plaintiffs acknowledge in response to their requests in discovery no
> defendant has provided documentary evidence of ZIMMER telling
> WILKINSON prior to the filing of this action of Plaintiffs and of the
> "secured lien" ZIMMER gave Plaintiffs "on the proceeds from the fees
> from the settlement upon receipt" that was owed ZIMMER from the
> Georgia Matter.  Notwithstanding, WILKINSON was informed of this
> when he received the summons and complaint in this action and thus
> WILKINSON knew at least as of then that it was ZIMMER['s]
> instructions to him that what was owed ZIMMER from the Georgia
> Matter up to 8% compound interest from 07/01/2004 until paid was to be
> paid to Plaintiffs.

Pls.' Mem. of Law in Supp. of Mot. for Summ. J. against Wilkinson at 1.  Simply put, Plaintiffs cannot transform themselves into the third-party beneficiaries of an alleged contract between D.H. Zimmer and Wilkinson by means of this litigation.  Thus, all of the arguments made by Plaintiffs concerning performance of the Facilitating and Enhancing Agreements and/or Civil Action Contingency Agreements, i.e., whether and how much Ormes, Wilkinson, and D.H. Zimmer recovered, or should have recovered, as attorneys' fees in the "Georgia Matter," are simply irrelevant as Plaintiffs are not intended beneficiaries thereof.

  Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiffs' motion for summary judgment against Wilkinson should be denied, Wilkinson's motion for summary judgment against Plaintiffs should be granted, and the claims against

Wilkinson should be dismissed.

## CONCLUSION

For the foregoing reasons, I conclude, and respectfully recommend that Your Honor should conclude that the parties' motions for summary judgment, Docket ## 317, 320, 323, 326, 329, 331, should be decided as follows:

(1) Plaintiffs' motion for summary judgment against D.H. Zimmer should be **granted** with respect to liability;

(2) Plaintiffs' motion for summary judgment against D.H. Zimmer should be **denied** with respect to damages, and the issue of damages should be resolved as follows:

(a) Plaintiffs should be awarded the principal amount of $67,625 ($83,625 - $16,000), plus prejudgment interest of 9% per annum from July 21, 2004, and post-judgment interest at the rate provided for in 28 U.S.C. § 1961; and

(b) a trial should be held to determine whether Plaintiffs should be awarded punitive damages and the amount of any such award;

(3) Plaintiffs' motion for summary judgment against the Other Zimmer Defendants should be **denied**;

(4) the Other Zimmer Defendants' motion for summary judgment against Plaintiffs should be **granted**;

(5) Plaintiffs' motion for summary judgment against Wilkinson should be **denied**;

(6) Wilkinson's motion for summary judgment against Plaintiffs should be **granted**; and

(7) the Other Zimmer Defendants and Wilkinson should be dismissed from the action.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d),

31

or a total of seventeen (17) days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Vincent Briccetti, at the United States District Court, Southern District of New York, United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Briccetti.

Dated: February 11, 2014
       White Plains, New York

Respectfully submitted,

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York

32